IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THOMAS H. CLAY, <br> TDCJ-CID NO. 1124123, <br><br> Plaintiff, <br><br> v. <br><br> DOCTOR ZAE YOUNG ZEON, et al., <br><br> Defendants. | § § § § § § § § § § § | CIVIL ACTION NO. H-14-0057 |

## MEMORANDUM OPINION AND ORDER

Thomas H. Clay, an inmate incarcerated at the Estelle Unit of the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ), filed a prisoner civil rights complaint alleging denial of medical care. (Docket Entry No. 1) He also filed an application to proceed as a pauper. (Docket Entry No. 2) Because of Clay's frivolous litigation history, the court ordered the Texas Attorney General's Office to file a report to determine if Clay is in imminent danger of serious physical harm. See 28 U.S.C. § 1915(g). After reviewing the Attorney General's report, supported by affidavits and medical records, and Clay's amended complaint (Docket Entry No. 33), the court has determined that this action should be dismissed because Clay is not entitled to proceed as a pauper. Id.

## I. Background and Allegations

### A. Clay's Litigation History

If an inmate files three or more civil complaints in the federal district or appellate courts that are dismissed as frivolous or malicious he may not file any further civil complaints without paying the filing fee in advance unless he can show that he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g); Adepegba v. Hammons, 103 F.3d 383, 385 (5th Cir. 1996). Clay has filed at least six federal prisoner civil rights complaints containing claims that were dismissed as frivolous.[1] Although in some instances Clay's complaints ultimately were dismissed for want of prosecution, the district court had dismissed as frivolous at least some of the claims presented in each of his cases. Consequently, the dismissals count as strikes for purposes of § 1915(g). Comeaux v. Cockrell, 72 F. App'x 54, 55-56 (5th Cir. 2003). Clay has since filed a civil rights complaint that was dismissed pursuant to § 1915(g). Clay v. Correctional Managed Health Care/UTMB, No. G-05-569 (S.D. Tex. 2005).

---

[1] Clay v. Nueces County Jail Sheriff's Dept., No. C-01-0158 (S.D. Tex. 2002); Clay v. Vasquez, No. C-01-0135 (S.D. Tex. 2002); Clay v. Christus Spohn Memorial, No. C-01-002 (S.D. Tex. 2001) (dismissed partially as frivolous; partially on summary judgment for Clay's failure to show deliberate indifference to medical needs); Clay v. Nueces County Jail, No. C-00-477 (S.D. Tex. 2002); Clay v. Ramos, No. C-00-0409 (S.D. Tex. 2002); Clay v. Ingle, No. C-96-0133 (S.D. Tex. 1997).

B.   **Clay's Allegations - Denial of Medical Care**

Clay has been notified that he cannot proceed in a civil rights action without paying the filing fee in advance unless he can demonstrate that he is presently in imminent danger of serious bodily harm. See Clay v. Correctional Managed Health Care/UTMB. With this knowledge he has drafted his original complaint seeking an exemption to § 1915(g)'s bar. See Docket Entry No. 1, p. 1.

Clay alleges that a blood screen culture was taken on April 19, 2013, which revealed "positive cocci cluster of numerous gram negative bacilli and rare epithelial cells" and "predominant potential pathogens of a providencia [sic] stuartii serratia . . . ." Id. at 2. He contends that this finding indicates the presence of an infectious disease, which he believes was brought about by some form of food poisoning. Clay alleges that despite the test results, he has been denied effective medication and therapy to combat the infection. He further claims that doctors have refused to see or treat him although he is suffering and is in danger of dying. Id. at 3. He also alleges that he became sick and lost 35 pounds because pathogens were placed in his meals in order to retaliate against him. Id. Because of the seriousness of the health conditions alleged by Clay, the court ordered the Attorney General to file a report on Clay's condition and the care provided him at the prison.

C.   **Clay's Amended Complaint (Docket Entry No. 33)**

In response to the Attorney General's report (Docket Entry No. 27), Clay filed a 123-page amended complaint naming at least 45 individuals, as well as other unnamed officials, alleging other events and conditions that are purported to show that he is in imminent danger of physical injury or death.[2] (Docket Entry Nos. 33, 33-1, and 33-2) Throughout the pleading Clay reiterates his claim that officials have attempted to poison him and have deliberately denied him medical care for his condition. See, e.g., Docket Entry No. 33, pp. 3-4, 6, 9-10, 16. He alleges that the poisoning was done in retaliation for his exercise of his right to practice his Muslim religion. Id. at 4, 13.

Clay makes other allegations in support of his claim that he is being retaliated against for being a Muslim. He complains that he was denied access to outdoor recreation and placed in an administrative segregation housing area known for violent activity. Id. at 4, 11, 15, 19, 21. He also complains of lack of access to medical services and religious meals. Id. Clay claims that his First and Fourteenth Amendment Rights were violated when he was

---

[2]Clay also denies that he has ever had a case or appeal that was dismissed as frivolous or malicious and therefore he is not barred by § 1915(g). (Docket Entry No. 33, p. 5) Clay presents no evidence in support of his argument. The court has examined federal district clerks' records, which show that Clay has filed multiple suits that have been dismissed with claims held to be frivolous. See United States v. Cantu, 167 F.3d 198, 204 (5th Cir. 1999).

denied access to the Estelle Unit Law Library and Mail Room. Id. at 7. He also claims that his right to practice his Muslim religion has been impeded by denying him special meals during Ramadan. Id. at 8, 16. Clay alleges that he was deprived of his legal materials and that his personal property was confiscated without cause. Id. at 16, 18. Clay also complains that he was subjected to retaliatory disciplinary action based on false charges. Id. at 26. The amended complaint generally consists of repetitions of the above allegations against the numerous defendants.

Many of the allegations fail to establish an actionable claim. Clay's complaint about the alleged unauthorized taking of his property does not support a constitutional violation. Brewster v. Dretke, 587 F.3d 764, 768 (5th Cir. 2009). His complaint that he was subjected to false disciplinary action is also baseless because he fails to show that he was subjected to an atypical deprivation. See Malchi v. Thaler, 211 F.3d 953, 958 (5th Cir. 2000). Clay's assertion that the acts are retaliatory are not based on any facts that show that the defendants' actions were based on their knowledge of Clay's religious affiliation or that they were even aware that Clay was a Muslim. McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998); see also McFaul v. Valenzuela, 684 F.3d 564, 578 (5th Cir. 2012); Shelton v. Lemons, 486 F. App'x 395, 397-398 (5th Cir. 2012).

Clay also fails to allege any facts that indicate that he was in danger of physical harm when he filed his complaint with regard to his claims that he was denied access to recreation, religious

services, the law library, or the mail room. See Adepegba, 103 F.3d at 385; Bell v. Livingston, 356 F. App'x 715, 716 (5th Cir. 2009). Many of the alleged violations occurred well before the December 26, 2013, filing date. Some of the incidents occurred more than a year before the pleading was submitted. See, e.g., Docket Entry No. 33, pp. 11, 17: denial of access to religious services and Ramadan meals from August 3, 2012, through August 19, 2012; Docket Entry No. 33, p. 16: removal from cell and taking of legal documents and personal property on October 16, 2012. Apart from failing to indicate any endangerment, such acts are too remote in time to qualify as "imminent." See Choyce v. Dominguez, 160 F.3d 1068, 1071 (5th Cir. 1998); see also Ball v. Famiglio, 726 F.3d 448, 467 (3d Cir. 2013) ("'Imminent' dangers are those dangers which are about to occur at any moment or are impending."), quoting Abdul-Akbar v. McKelvie, 239 F.3d 307, 315 (3d Cir. 2001). Therefore, only Clay's allegations regarding lack of medical care for an infection will be considered when reviewing the Attorney General's report.

## II. **The Attorney General's Report**

Pursuant to the court's order, the Attorney General submitted a Martinez[3] report and an amended report detailing Clay's medical condition and the medical care given to him in reference to his allegations of deliberate indifference to his serious health needs.

---

[3] Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978).

(Docket Entry Nos. 18 and 27)  Included with the reports are medical records (filed under seal) relating to Clay's condition and treatment as alleged in the complaint.  (Docket Entry Nos. 20 and 29)  An affidavit of Steven Bowers, M.D., relating to Clay's treatment (Docket Entry No. 18-2) has also been submitted.

The medical records show that Clay was seen and treated regularly in response to various complaints and ailments including possible allergies.  See, e.g., Docket Entry No. 29-6, pp. 18-27.  Although treatment was made available to him, Clay refused it on March 20, 2013.  Id. at 18.  On March 25, 2013, Clay submitted a sick call request reporting physical difficulties stemming from what he believed were substances in his food.  Id. at 16.  Clay was brought to the clinic for treatment on March 31, 2013, but he became verbally agitated and had to be removed by security.  Id. at 15.

On April 4, 2013, Clay submitted a sick call complaining about a "hole in [his] ankle" and repeating his belief that he was the victim of food poisoning.  (Docket Entry No. 29-6, p. 14)  A health care worker responded that Clay had been seen on February 23, 2013, and changes had been made to his diet.  Id.  Clay submitted another sick call on April 6, 2013.  Id. at 13.  This time he complained only of the hole in his ankle.  Id.

Clay's sick call about his ankle was received on April 7, 2013, and a nurse examined him two days later.  Id. at 6-12.  Clay did not exhibit any signs of acute distress when he was examined although he did have a small lesion on his left ankle and had some

trouble walking. (Docket Entry No. 29-6, p. 10) Clay speculated that the holes developed because he was wearing his "Jackie Chan" shoes. Id. After noting that the alleged culprit shoes did not come in contact with the affected area and that Clay did not appear to be in serious condition, the attending nurse instructed him to keep the wound clean and dry and to advise the health clinic if his condition worsened. Id. Clay was apparently dissatisfied with the nurse's diagnosis, but he indicated that he understood her instructions and departed from the clinic. Id. Clay was 73 inches tall (6', 1") and weighed 204 pounds when he was examined on April 9. Id. at 6.

Clay was scheduled for a follow-up visit on April 12, 2013, but he did not show because no escort was available. (Docket Entry No. 29-6, p. 5) Clay was seen on April 15, 2013, and a wound culture was taken from Clay's left foot. Id. at 1; Docket Entry No. 18-2, p. 3. The test results revealed that Clay had an infection in his left ankle. (Docket Entry No. 29-5, p. 63) Dr. Nathaniel Robertson saw Clay the next day and, after noting Clay's condition and examining the test results, prescribed antibiotics to combat the infection. Id. at 63-64. He also ordered ankle x-rays, blood work, daily wound care with periodic saline rinses and changes of the bandaging, and Tylenol #3 for pain. Id.

Pursuant to Dr. Robertson's order, medical providers continued to monitor Clay's condition and provide treatment including

prescribed antibiotics until his left ankle condition healed over the next eight months. (Docket Entry No. 18-2, p. 3; Docket Entry Nos. 29-4 and 29-5) Clay was provided wound dressing changes and wound care on numerous occasions until the ankle fully healed. He was also treated for other complaints including an injury he received when he stuck his hand in a cell slot. See Docket Entry No. 29-5, p. 9. In addition, Clay was also provided dental care for a tooth infection. See Docket Entry No. 29-3, pp. 21-22. Clay was also treated for a back ailment although he refused to be taken to the UTMB Hospital in Galveston for treatment. (Docket Entry No. 29-2, pp. 18-19)

When Clay was examined on January 14, 2014, his ankle showed no sign of infection, and he was walking with a stable gate. (Docket Entry No. 29-1, p. 20) At that time, Clay appeared to have no problems. Id. He had previously been weighed on January 9, 2014, and weighed 195 pounds. Id. at 28. Clay's medical records indicated that the medical treatment provided was appropriate and performed within the standard of medical care needed for his ailments. (Docket Entry No. 18-2, p. 4)

### III. Analysis

Prison inmates have a right to "adequate medical care" under the Eighth Amendment. Coleman v. Sweetin, 745 F.3d 756, 765 (5th Cir. 2014), citing Rogers v. Boatright, 709 F.3d 403, 409 (5th Cir. 2013). Prison officials may violate this right if they exhibit

"deliberate indifference to a prisoner's serious medical needs." Id. citing Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Estelle v. Gamble, 97 S. Ct. 285, 292 (1976). "To establish deliberate indifference . . . the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998), citing Farmer v. Brennan, 114 S. Ct. 1970 (1994). The standard for deliberate indifference is high and requires more than a showing of negligence; there must be a showing that the defendants were criminally reckless in failing to respond to a situation in which they were aware that a prisoner faced a substantial risk of serious harm. Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 1999); McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); Hare v. City of Corinth, Miss., 74 F.3d 633, 645 (5th Cir. 1996).

The Attorney General's Report confirms Clay's general allegation that he had an infection, although the infection occurred because of an ankle wound -- not food poisoning. If the health care workers had not attended to Clay's ankle wound, failure to provide treatment could raise the issue of whether this omission was the result of deliberate indifference. See Coleman, 745 F.3d at 766; Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006); see also Fuller v. Harris County, 137 F. App'x 677, 678-79 (5th

Cir. 2005); Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005) (A "'medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"), quoting Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000).

Although the report and records indicate that Clay had a serious medical condition that needed attention, there is no evidence that prison officials ignored his condition. The records, supported by Dr. Bowers' affidavit, demonstrate that Clay's infection was continuously monitored until his wound was healed. Moreover, there is no indication that Clay had been subjected to food poisoning, deliberate or otherwise. Clay's allegation that he lost 35 pounds is refuted by the record which reflects that Clay lost no more than 9 pounds or less than 5% of his total body weight.

While Clay's condition was serious, there is no indication that the condition was the result of deliberate indifference by prison custodians or health care workers responsible for his care. In addition, there is no support for any finding that Clay was in imminent danger of serious bodily harm when he filed his complaint. Disagreement with a doctor's or other health care provider's reasonable diagnosis does not support a claim of deliberate indifference; nor does it suggest imminent physical endangerment. See Sama v. Hannigan, 669 F.3d 585, 590-591 (5th Cir. 2012);

Gobert, 463 F.3d at 346. Clay's unsupported allegations are insufficient to warrant an exception to § 1915(g)'s three strikes bar against him. Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003). Consequently, Clay has failed to show that he is eligible to proceed as a pauper. Choyce, 160 F.3d at 1071.

In addition, Clay has misstated his litigation history by denying ever receiving frivolous dismissals. (Docket Entry No. 33, p. 5) In reviewing prisoner pleadings the courts liberally construe the pleadings and generally accept all allegations as true. However, the courts may take judicial notice of related court proceedings and records when determining the validity of the claims before them. MacMillan Bloedel Ltd. v. Flintkote Co., 760 F.2d 580, 587-88 (5th Cir. 1985). Given Clay's litigation history his dishonesty regarding previous suits, and the multiple claims unrelated to imminent physical danger contained in the complaints in this action, his allegation of imminent danger is so lacking in credibility that he will be denied permission to proceed in forma pauperis. Clay will be required to pay the entire filing fee as soon as funds are available. See Branum v. Fontenot, 288 F. App'x 990, 991 (5th Cir. 2008), citing Williams v. Roberts, 116 F.3d 1126, 1128 (5th Cir. 1997).

Therefore, this action will be dismissed, and Clay will be barred from any future filings until he has paid his full filing fee debt except (1) filings in any criminal proceeding brought against him, (2) a timely filed reconsideration motion showing why

the sanction should not be applied to him, and (3) any appeal of the Final Judgment entered in this action. See Mathis v. Smith, 181 F. App'x 808, 809 (11th Cir. 2006). The TDCJ Inmate Trust Fund shall be instructed to withdraw Four Hundred Dollars ($400.00) from Clay's Inmate Trust Account. Clay may not withdraw any funds from the account until the sanction is paid.

### IV. Conclusion

The court **ORDERS** the following:

1. The prisoner civil rights complaint (Docket Entry No. 1), as amended by Docket Entry No. 33, filed by TDCJ Inmate Thomas Clay, TDCJ No. 1124123, is **DISMISSED** pursuant to 28 U.S.C. § 1915(g).

2. Clay's Motion in Demand for Jury Trial (Docket Entry No. 9); Application to Proceed In Forma Pauperis (Docket Entry No. 10); motions for physical examination of Clay (Docket Entry Nos. 14 and 16); motion for pathogenic blood screen (Docket Entry No. 15); and Motion to Strike (Docket Entry No. 24) are **DENIED**.

3. Clay shall pay the full $400.00 filing fee to the Clerk of this Court. 28 U.S.C. § 1915(b)(1).

4. <u>The TDCJ-CID Inmate Trust fund shall place a hold on Clay's trust account (No. 1124123) until the entire filing fee ($400.00) has accumulated in the account. At that time, the Inmate Trust Fund shall forward $400.00 to the Clerk pursuant to this Memorandum Opinion and Order.</u>

5. Except as noted above, Clay is **BARRED** from future filings until the entire filing fee has been paid.

6. The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties; the TDCJ - Office of the General Counsel, P.O.

Box 13084, Austin, Texas 78711, Fax Number 512-936-2159; the TDCJ Inmate Trust Fund, P.O. Box 60, Huntsville, Texas 77342-0060, Fax Number 936-437-4793; and the Pro Se Clerk's Office for the United States District Court, Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas 75702 by mail, fax, or electronic means.

**SIGNED** at Houston, Texas, on this 20th day of August, 2014.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE